J-S09032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               : PENNSYLVANIA
                                               :
                        v.                       :
                                               :
RAYMOND HARGROVE              :
                                           :
              Appellant          : No. 900 EDA 2023

Appeal from the Judgment of Sentence Entered March 2, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007106-2018

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                            **FILED MAY 30, 2024**

Raymond Hargrove ("Hargrove") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas following his plea of nolo contendere to possession of a firearm prohibited.[1] Hargrove's counsel, Attorney William A. Love ("Counsel"), seeks to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). Upon review, we grant Counsel's petition to withdraw and affirm Hargrove's judgment of sentence.

On July 30, 2018, Philadelphia police officers received a flash that a black male wearing a red shirt and black pants had pulled a gun on someone

---

[1] 18 Pa.C.S. § 6105(a)(1).

on North 20th Street. Upon responding to the scene, officers encountered Hargrove, who matched the description, near the 2500 block of 20th Street. They approached Hargrove and noticed a large bulge in his front pants pocket. Subsequently, the officers observed the handle of a firearm sticking out of his front pants pocket. The officers recovered the firearm, which was inoperable, and arrested Hargrove. Thereafter, the Commonwealth charged him with possession of a firearm prohibited, firearms not to be carried without a license, carrying firearms on a public street in Philadelphia, simple assault, recklessly endangering another person, and terroristic threats. All charges were bound over for trial and Hargrove remained in county prison awaiting trial.

In March 2019, Hargrove, through his counsel, Attorney Eileen Hurley, filed an omnibus pretrial motion to suppress evidence. Subsequently, Hargrove filed several motions pro se, challenging the trial court's jurisdiction, asserting violations of his right to a speedy trial pursuant to the United States and Pennsylvania Constitutions and Pa.R.Crim.P. 600, and expressing dissatisfaction with Attorney Hurley.

The trial court scheduled a jury trial for August 29, 2022. At the outset, the trial court asked Hargrove whether he wished to select a jury or to accept a plea offer from the Commonwealth. Attorney Hurley reiterated Hargrove's options: (1) proceed to a jury trial; (2) waive his right to a jury and proceed to a non-jury trial; (3) accept the Commonwealth's offer to plead guilty in exchange for a sentence of four to eight years of incarceration, with credit for

the four years that he already served; (4) plead guilty to possession of a firearm prohibited with the sentence to be determined by the trial court; or (5) plead nolo contendere to possession of a firearm prohibited with the sentence to be determined by the trial court. *See* N.T., 8/26/2022, at 5-6.

Attorney Hurley explained that if Hargrove pleaded nolo contendere, he would not admit guilt but would not contest the Commonwealth's case. *Id.* Hargrove indicated that he did not wish to accept the Commonwealth's offer for a negotiated sentence, even with the possibility of immediate release on parole, because he would have to be transferred to the state penitentiary. *See id.* at 7. If Hargrove entered an open plea, the trial court explained, it would order him to undergo a mental health examination, listen to his allocution at the sentencing hearing, and consider mitigating factors such as his health. *See id.* at 9-13.

Hargrove stated his desire to enter a nolo contendere plea to possession of a firearm prohibited. *Id.* at 13. The trial court then conducted an on-the-record colloquy. In response to the trial court's questions, Hargrove indicated: he was fifty-seven years old; he had left school in the seventh grade; he had difficulty reading, writing, and understanding English but he "manage[d]"; the prison was giving him Buspar, which he had taken along with Prozac prior to entering prison; and that the Buspar "somewhat" helped his anxiety, hypertension, and bipolar disorder. *Id.* at 13-15. The trial court informed Hargrove that by pleading nolo contendere, he was giving up his right to a

trial, and that the trial court would likely decide that the Commonwealth's statement of facts established the elements of the crime. *Id.* at 15-16. Hargrove said that he understood, and asked the trial court if it would adjudicate the matter with "clean hands" and "in good faith." *Id.* The trial court responded that it would. The trial court reminded Hargrove that the jury was waiting next door to be picked for his trial, but that if he pleaded nolo contendere, he would give up his jury trial rights and almost all appellate rights. *Id.* at 18-20. The trial court and Attorney Hurley explained that he could ask the court to reconsider his sentence or that he may challenge the sentence on appeal. *Id.* at 20-21. The trial court informed Hargrove that he could not "get more than 10 to 20," and that the court would not consider anything above four to eight years unless the Commonwealth provided additional information "because that's what [the Commonwealth] has said the case is worth" by offering that amount in a plea. *Id.* at 21-22.

Hargrove inquired about the status of the omnibus motion to suppress evidence. *Id.* at 24. The trial court explained that by entering a plea of guilty or nolo contendere, he would be giving up the right to "litigate anything pretrial" and the only issues that he could appeal was "whether [his] decision was voluntary and whether [the court] [gave him] a bad sentence from [his] perspective." *Id.* at 24-25.

Hargrove answered "no" when asked if anyone was forcing him to enter a plea. *Id.* at 25. When the court asked him if anyone promised him anything

(other than what the court promised him), Hargrove responded, "[s]he suggested it," referring to Attorney Hurley. *Id.* The trial court stated that was Attorney Hurley's job, but the decision was solely his to make. *Id.* Hargrove replied, "Yeah. I made it already." *Id.*

Hargrove then entered an open nolo contendere plea to possession of a firearm prohibited in exchange for the Commonwealth's nolle prosequi of the remaining charges. The trial court accepted the plea, finding that the Commonwealth's statement of facts were sufficient to establish the elements of the crime. *Id.* at 28-29.[2]

The trial court ordered a pre-sentence investigation report and mental health evaluation, scheduled the sentencing hearing, and told Hargrove that he should arrange for family to be present in case the court decided to sentence him to time served. *Id.* at 29-31. Ultimately, however, Hargrove refused to cooperate with the pre-sentence investigation and the mental health evaluation despite several opportunities for him to comply. Eventually, the pre-sentence investigator filed a pre-sentence investigation report without the benefit of Hargrove's participation.

---

[2] After accepting the plea, the trial court gave Hargrove the opportunity to review and accept the written colloquy, noting for the record that he did not review the document prior to entering into his plea because he had made his decision to plead on the record. *See id.* at 31-32. Hargrove then initialed and signed the written plea colloquy. *See* Written Plea Colloquy, 8/29/2022, at 1-7.

- 5 -

In November 2022, Hargrove filed a pro se motion seeking to withdraw his plea "because of bad faith, unclean hands, and dishonor," claiming that "there is no criminal law in America," and there was "obstruction of justice violating his due process rights." Pro Se Motion to Withdraw, 11/2/2022, at Introductory Paragraph. Specifically, he asserted the following grounds for his request to withdraw his plea: (1) dissatisfaction with Attorney Hurley because she failed to raise his Rule 600 and suppression motions and because "a [b]ar[-l]icensed attorney is a conflict of interest," *id.* ¶¶ 3-7; (2) entry of an involuntary and unintelligent plea because he was under the influence of a mental health medication prescribed by the jail when he entered his plea and the trial court coerced him into accepting the plea, *id.* ¶¶ 9-10, 12; (3) an unspecified but "clear assertion of innocence," *id.* ¶ 15; and (4) suppression of the firearm was warranted based upon the police officers' false and uncorroborated allegations that the officers took the inoperable firearm from his person, *id.* at ¶¶ 10-11.

Meanwhile, the trial court twice continued the sentencing hearing because Hargrove refused to comply with a Covid testing policy required for transport from the prison to the courthouse. The trial court arranged for the hearing to occur via video, but Hargrove refused to leave his cell to participate, forcing a third continuance.

On March 2, 2023, Attorney Hurley was present at the sentencing hearing, but Hargrove once again refused to leave his cell to participate via

video.[3]  At the trial court's request, Attorney Hurley detailed Hargrove's longstanding failure to cooperate with her assistance and with the legal process.  *See id.* at 10-16.  In addition to his refusal to cooperate or recognize the authority of the trial court based upon his membership in the Moor Nation in December 2019, Hargrove "refused to come out" for several court listings despite being transported to the court.  *Id.* at 12.  Hargrove largely rebuked Attorney Hurley's attempts to visit him in jail.  Historically, he refused to wear a mask in accordance with the prison's mask mandate for visits.  Since he entered his plea, he thrice refused to meet with her.  *Id.* at 14-15.  Normally, Attorney Hurley would petition to withdraw, but she did not "because it would just be the same thing with somebody else."  *Id.* at 16.  Attorney Hurley noted that she and past trial judges in the case have been concerned about "mental health issues" for Hargrove, but that Hargrove "just refuses to cooperate" with any attempt to address or evaluate his mental health.  *Id.* at 22.  She mentioned that Hargrove is deaf in one ear and "doesn't really hear well," which causes him to become "very frustrated" because he "doesn't really understand a lot of what is going on."  *Id.*  Attorney Hurley requested that

_____

[3] That same day, Hargrove mailed a pro se motion.  The clerk of court received the motion on March 8, 2023, and docketed it to reflect the mailing date of March 2, 2023.  Although the motion was entitled "Petition to [Withdraw] Illicit Plea and Replace Ineffective Counsel," the substance of the motion did not address the plea.  Instead, the motion sought to remove and replace Attorney Hurley.  As discussed infra, the trial court granted the motion and appointed substitute counsel following the March 23, 2023 hearing regarding the post-sentence motion filed by Attorney Hurley.

the jail provide him with hearing aids, but the jail cannot do so unless Hargrove participates in a medical evaluation. *Id.*

Hargrove's failure to cooperate notwithstanding, Attorney Hurley argued that Hargrove did not need to be present for the trial court to consider his request to withdraw the plea and requested that the trial court rule upon his motion to withdraw the plea as written.[4] *Id.* at 22-23. The Commonwealth, disagreed, arguing that Hargrove waived his right to proceed on the motion by voluntarily refusing to attend court for four proceedings in a row, and that the Commonwealth would be prejudiced should the court grant Hargrove's motion because the case was almost five years old, Hargrove "apparently … just wants to keep dragging this on," and some Commonwealth witnesses are no longer available. *Id.* at 17. The trial court determined that Hargrove's absence was "willful" and "without cause," and that he "knowingly, intelligently, [and] voluntarily waived his right to be present" to address his motion to withdraw his plea and his sentencing. *Id.* at 17-19, 35.

Nevertheless, the trial court addressed his motion. The trial court informed counsel that it reviewed the notes of testimony and recalled taking Hargrove's plea, and the trial court was convinced that Hargrove entered his

---

[4] Hargrove's pro se pre-sentence motion to withdraw his plea was a legal nullity without legal effect because hybrid representation is not permitted in this Commonwealth. *See Commonwealth v. Williams*, 241 A.3d 353, 354 n.1 (Pa. Super. 2020). Nevertheless, the trial court properly ruled upon the motion because Attorney Hurley orally adopted the motion and requested a ruling.

plea voluntarily. The trial court recalled conducting an "extensive, extensive colloquy," wherein they discussed Hargrove's medication, his incarceration for four years in the county jail awaiting trial, and his desire to avoid a sentence requiring him "to go upstate" to the state penitentiary. *Id.* at 26. The trial court opined that it was "clear" that Hargrove "did understand everything," including that the jury was ready if he wanted to proceed to trial that day. *Id.* at 27. According to Attorney Hurley, Hargrove originally had planned to plead guilty, but after talking to the trial court, he decided to plead "no contest" after the plea was explained to him. *Id.* Ultimately, the trial court stated that it was "denying the motion to withdraw his plea," and that it would proceed to sentence Hargrove in abstentia. *Id.* at 28.

The trial court next reviewed Hargrove's extensive criminal history. The trial court noted that under the sentencing guidelines, it could sentence Hargrove to the statutory maximum because the offense gravity score was eleven and Hargrove's prior record score was Repeat Violent Offender ("REVOC"). *Id.* at 19-21, 27; *see also* 204 Pa.Code § 303.16 (providing a guideline sentence of ten years plus twelve months for aggravated range or minus twelve months for mitigated range). The trial court noted that at the plea hearing, the prosecutor incorrectly represented to Hargrove that he was subject to a lower potential range applicable to offenders with a prior record score of Repeat Felony 1 and Felony 2 Offender ("REFEL"). N.T., 3/2/2023, at 27; *accord* N.T., 8/29/2022, at 6 (prosecutor representing the guidelines

as 84 to 102 months (i.e., seven to eight and one-half years). Nevertheless, the trial court stated that it was inclined to sentence him to five to ten years of incarceration, which was a downward departure under either classification. N.T., 3/2/2023, at 27-28.

The Commonwealth asked the court to sentence Hargrove to five to ten years of incarceration, arguing that it balanced his long criminal record and oppositional behavior post-plea, on the one hand, with his cooperation in pleading nolo contendere and the Commonwealth's prior offer to him, on the other. *Id.* at 28-29, 31-32. Attorney Hurley urged the trial court to sentence him to four to eight years in prison, highlighting his mental health; his "institutionalization"; his "very poor health" including "horrible headaches," two trips to the hospital, and hearing impairment; and his lack of family support due to his mother's age and his brother's immobility. *Id.* at 29-30.

The trial court sentenced Hargrove below the guidelines to four to ten years' incarceration with credit for time served for the grade one felony persons not to possess a firearm charge, citing its consideration of his older age, his possible mental health problems, his poor physical health in prison, the lengthy time he has spent in custody to date, the unlikeliness that he would be paroled, and the safety of Philadelphia citizens. *Id.* at 28-32. All other charges were nolle prossed by the Commonwealth. Order of Sentence, 3/2/2023, at 1. The trial court entered a separate order denying Hargrove's pro se motion to withdraw his plea.

Attorney Hurley filed a post-sentence motion[5] on Hargrove's behalf. The motion acknowledged that the sentence was a downward departure in the mitigated range of the guidelines[6] but requested that the trial court "reconsider this sentence and allow [Hargrove] to withdraw his no contest plea." Post-Sentence Motion, 3/10/23, ¶¶ 5-7. Hargrove appeared at the hearing on the post-sentence motion but refused to be sworn or to affirm. *See* Trial Court Order, March 23, 2023, at 1. The trial court denied the motion. It also entered an order permitting Attorney Hurley to withdraw and appointing Counsel for purposes of appeal.

Hargrove, through Counsel, filed a timely notice of appeal. The trial court ordered Hargrove to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and in response, Counsel filed a statement of intent to withdraw pursuant to *Anders*/*Santiago* in lieu of a Rule 1925(b) statement. *See* Pa.R.A.P.

---

[5] Hargrove filed a pro se notice of appeal prior to expiration of the ten-day period for filing post-sentence motions. *See Commonwealth v. Cooper*, 27 A.3d 994 (Pa. 2011) (explaining that "snap pro se notice of appeal" does not divest the trial court of jurisdiction to rule upon a counseled post-sentence motion). This Court later dismissed Hargrove's pro se appeal as duplicative of this instant appeal filed by Counsel.

[6] Attorney Hurley incorrectly miscalculated Hargrove's prior record as RFEL and offense gravity score as 10, and thereby misstated that the guideline sentence was seventy-two months (six years) to eighty-five months (slightly over seven years), subject to an upward or downward departure of twelve months. Nevertheless, as noted, Hargrove's sentence was below the guidelines.

1925(c)(4) ("If counsel intends to seek to withdraw in a criminal case pursuant to ***Anders***/***Santiago*** … counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a Statement."). The trial court issued an opinion in accordance with Pa.R.A.P. 1925(a).

Counsel filed an ***Anders*** brief and petition to withdraw as counsel in this Court. When faced with an ***Anders*** brief, we may not review the merits of the underlying issues or allow withdrawal without first deciding whether counsel has complied with all requirements set forth in ***Anders*** and ***Santiago***. ***Commonwealth v. Wimbush***, 951 A.2d 379, 382 (Pa. Super. 2008). There are mandates that counsel seeking to withdraw pursuant to ***Anders*** must follow, which arise because a criminal defendant has a constitutional right to a direct appeal and to be represented by counsel for the pendency of that appeal. ***Commonwealth v. Woods***, 939 A.2d 896, 898 (Pa. Super. 2007). We have summarized these requirements as follows:

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g.,

directing counsel either to comply with ***Anders*** or file an advocate's brief on [a]ppellant's behalf).

***Id.*** (citations omitted).

Additionally, ***Santiago*** sets forth precisely what an ***Anders*** brief must contain:

> [T]he ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361. If counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings to determine whether there are any other non-frivolous issues that the appellant could raise on appeal. ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

Instantly, we conclude that Counsel has complied with the requirements outlined above. Counsel has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. In conformance with ***Santiago***, Counsel's brief includes summaries of the facts and procedural history of the case and discusses the issues he believes might arguably support Hargrove's appeal. ***See Anders*** Brief at 10-24. Counsel's brief further sets forth his conclusion that the appeal is frivolous and includes discussion of, and citation to, relevant authority in support of his conclusion.

- 13 -

*Id.* Finally, Counsel attached to his petition to withdraw the letter he sent to Hargrove, which enclosed Counsel's petition and *Anders* brief. Petition to Withdraw, 9/22/2023, Exhibit A. Counsel's letter advised Hargrove of his right to proceed pro se or with private counsel and to raise any additional issues that he deems worthy of this Court's consideration. *Id.* Because Counsel has complied with the procedural requirements for withdrawing from representation, we turn our attention to the issues Counsel raised in the *Anders* brief, re-ordered for ease of disposition:

(1)　Whether the sentencing court violated [] Hargrove's Sixth Amendment rights by sentencing him in absentia;

(2)　Whether the lower court erred in denying [] Hargrove's motion to withdraw his [nolo contendere] plea;

(3)　Whether his nolo contendere plea was knowing, voluntary and intelligent; and

(4)　Whether the sentencing court violated the discretionary aspects of sentencing.

*Anders* Brief at 10.

We begin with the trial court's decision to proceed in absentia at sentencing, *see id.* at 20-24, which we review for an abuse of discretion. *Commonwealth v. Wilson*, 712 A.2d 735, 739 (Pa. 1998).

"A criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right. *Commonwealth v. Tejada*, 188 A.3d 1288, 1293 (Pa. Super. 2018). The constitutional right extends to all critical stages of a criminal trial, and stems from the

- 14 -

Confrontation Clause of the Sixth Amendment to the United States Constitution, the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Hunsberger*, 58 A.3d 32, 37 (Pa. 2012). Not only does a defendant have the right to attend, "[u]nless the defendant is prevented from attending the proceedings for reasons beyond his or her control, then the defendant is expected to be present at all stages of the trial." *Wilson*, 712 A.2d at 737. The right to be present is not absolute and may be waived or forfeited. *See Tejada*, 188 A.3d at 1293. There is a "critical distinction between waiver and forfeiture." *Commonwealth v. Adams*, 200 A.3d 944, 953 (Pa. 2019). A waiver is a voluntary "knowing and intentional relinquishment of a known right." *Id.* at 954. In contrast, regardless of the defendant's intent or knowledge, a defendant may forfeit a right, even a constitutional right, by engaging in "extremely serious misconduct" or "extremely dilatory conduct." *Adams*, 200 A.3d at 953-54. We have also recognized a third category that results in the loss of the right to be present, referred to as either "implied waiver by conduct" or "forfeiture with knowledge," which occurs where a defendant "voluntarily engag[es] in misconduct knowing what they stand to lose," but the defendant does not affirmatively request the lost relief. *See Commonwealth v. Kelly*, 5 A.3d 370, 379 (Pa. Super. 2010) (citation omitted).

Here, on four separate occasions, Hargrove refused to appear for sentencing. The trial court attempted to accommodate Hargrove after he refused to comply with Covid testing by scheduling a video hearing for sentencing. Hargrove denied the trial court's offer and continued to refuse to leave his cell.

Given Hargrove's continued pursuit of relief juxtaposed with his obstinate and sustained refusal to participate in the proceedings that could provide him with such relief, the trial court did not abuse its discretion by concluding that Hargrove lost the right to be present at sentencing by engaging in repeated obstinate and dilatory conduct. *See* Trial Court Opinion, 6/9/2023, at 4 ("A defendant who decides to bypass orderly criminal procedures by purposely absenting himself is not permitted to seek relief, and is bound by the consequences of his decision.");[7] *see also Adams*, 200 A.3d at 954 (noting that "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right") (citation omitted).[8] Based upon the facts in

_____

[7] Initially, at the sentencing hearing, the trial court determined that Hargrove knowingly, intelligently, and voluntarily waived his right to be present for the motion to withdraw his nolo contendere plea and for sentencing because he was deliberately absent without cause. N.T., 3/2/2023, at 35. Based upon our review of the case law, forfeiture appears to be the applicable doctrine.

[8] Nevertheless, to the extent that the trial court determined, based upon *Adams*, that Hargrove lost the right to challenge the validity of his plea or sentence entirely, such conclusion was erroneous. Although Hargrove's
*(Footnote Continued Next Page)*

- 16 -

this case, any challenge to the trial court's invocation of its discretion to proceed in absentia would be frivolous.

Counsel next argues that the trial court erred in denying Hargrove's pre-sentence motion to withdraw his plea. *See Anders Brief* at 11-14, 17-20. We review a trial court's denial of a pre-sentence motion to withdraw a plea for an abuse of discretion. *Commonwealth v. Islas*, 156 A.3d 1185, 1187 (Pa. Super. 2017). This Court "must not substitute its judgment for that of the trial court; rather, we must discern whether the trial court acted within its permissible discretion." *Garcia*, 280 A.3d at 1024 (citing *Norton*, 201 A.3d at 121).

"At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, … the withdrawal of a plea of … nolo contendere and the substitution of a plea of not guilty[.]" Pa.R.Crim.P. 591(A). In exercising such discretion when considering a pre-sentence motion filed before judgment, trial courts should "show solicitude for a defendant who wishes to undo a waiver of all constitutional rights that surround the right to trial – perhaps the most devastating waiver possible under our constitution." *Commonwealth v. Garcia*, 280 A.3d 1019, 1024 (Pa. Super. 2022). The trial court must construe a pre-sentence motion to

---

refusal to cooperate had the effect of rendering him unable to offer testimony in support of the motion to withdraw his plea and an allocution at sentencing, Attorney Hurley preserved Hargrove's challenges.

withdraw a plea "liberally in favor of the accused" and "any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth." *Commonwealth v. Carrasquillo*, 115 A.3d 1284, 1292 (Pa. 2015). A defendant need not testify in order to establish the plausibility of the fair and just reason, but the defendant does bear the burden of production and persuasion to support the motion. *See Garcia*, 280 A.3d at 1027.

Nevertheless, the right to withdraw a nolo contendere plea is not absolute. *Commonwealth v. Norton*, 201 A.3d 112, 116 (Pa. 2019). For example, a defendant's bare assertion of innocence will not establish a fair and just reason to withdraw a plea per se. *Id.* at 120. Instead, the trial court has discretion to consider the credibility or plausibility of a defendant's assertion of innocence when assessing whether the defendant has offered a colorable claim that the withdrawal of the plea would promote fairness and justice. *Id.* at 120-21. The trial court "must decide on a case-by-case basis whether a defendant, moving to withdraw a [nolo contendere] plea presentence, has presented a fair and just reason to support such a motion." *Id.* at 123 n.7.

The record in this case reflects that despite his professed desire to withdraw his nolo contendere plea, as expressed in his pro se pre-sentence motion, Hargrove repeatedly refused to cooperate with Attorney Hurley and to attend court proceedings. As a result, all the trial court had before it to

consider when deciding Hargrove's pre-sentence motion to withdraw were Hargrove's averments and arguments in the pro se motion adopted by counsel.

We discern no abuse of discretion in the trial court's conclusion that none of the proffered reasons, as written in Hargrove's motion, established a fair and just reason to withdraw his plea. To arrive at this conclusion, the trial court reviewed the plea hearing, noting that it discussed the available options at length with Hargrove, inquired about Hargrove's medication and any impact upon his ability to understand the proceedings,[9] and informed him that by entering a nolo contendere plea, he was forfeiting the opportunity for decision upon any of his pending pretrial motions. The court also reasoned that Hargrove understood the implications of the plea because Hargrove participated and asked reasonable questions. As our summary of the facts hereinabove reflects, the record fully supports the trial court's determination, and the law is clear that Hargrove is bound by his statements, given under oath, made during the plea colloquy. *See Commonwealth v. Culsoir*, 209

_____

[9] We observe that Hargrove did respond "yes" in the written colloquy as to whether his medication impacted his ability to understand the proceedings. Nevertheless, the trial court had the benefit of Hargrove's verbal responses regarding his medication and was entitled to resolve any conflict in favor of Hargrove's testimony under oath. Although we observe several other irregularities within the written colloquy, Hargrove did not identify them in his motion as a basis to withdraw his plea, and the trial court relied upon its oral colloquy and assessment of Hargrove's understanding to determine that he entered into the plea knowingly, intelligently, and voluntarily.

A.3d 433, 437 (Pa. Super. 2019). Accordingly, the trial court did not abuse its discretion in denying his pre-sentence request to withdraw his plea, and we agree that, under the circumstances presented here, the claim is frivolous.

The third potential issue identified by Counsel is that Hargrove's nolo contendere plea was not knowing, voluntary and intelligent such that the trial court erred by denying his post-sentence motion to withdraw his plea. *See Anders* Brief at 11-14.

Unlike the standard for pre-sentence withdrawal, the "standard for post-sentence withdrawal is a stringent one." *Norton*, 201 A.3d at 582 n.6. The trial court must apply a higher level of scrutiny to discourage entry of pleas as "sentence-testing devices." *Commonwealth v. Starr*, 301 A.2d 592, 595 (Pa. 1973). Additionally, the "different treatment of pre- and post-sentence motions reflects the tension in our jurisprudence between the individual's fundamental right to a trial and the need for finality in the proceedings." *Commonwealth v. Hvizda*, 116 A.3d 1103, 1106 n.2 (Pa. 2015). Accordingly, when a defendant seeks to withdraw a plea after sentencing, he must demonstrate "prejudice on the order of manifest injustice." *Starr*, 301 A.2d at 595. "Manifest injustice occurs when the plea is not tendered knowingly, intelligently, voluntarily, and understandingly." *Commonwealth v. Kpou*, 153 A.3d 1020, 1023 (Pa. Super. 2016). To make such a determination, the court "must examine the totality of circumstances surrounding the plea." *Commonwealth v. Hart*, 174 A.3d 660, 664-65 (Pa.

Super. 2017). "[D]efendants are bound by statements they make during their … plea colloquies and may not successfully assert any claims that contradict those statements."[10] *Culsoir*, 209 A.3d at 437.

Although Hargrove, through Attorney Hurley, filed a timely post-sentence motion seeking to withdraw his plea, the motion contained no claim of manifest injustice, and Hargrove's refusal to be sworn or to affirm so that he could provide such testimony results in his waiver of his claim. *See Commonwealth v. Moore*, 307 A.3d 95, 99 (Pa. Super. 2023). Even if not waived, the trial court did not abuse its discretion by concluding, based upon the evidence of record, that Hargrove entered a voluntary and knowing plea. Hargrove understood the nature and elements of the charge; understood the factual basis of the plea; understood the plea deal and the rights he was foregoing by pleading nolo contendere; understood the permissible range of sentences and recognized that the judge did not have to accept the plea; and indicated that no one had forced or threatened him to enter the plea. *See* N.T., 8/26/2022, at 13-27; *see also Culsoir*, 209 A.3d at 437. Because the trial court did not abuse its discretion in determining that Hargrove failed to

---

[10] Pa.R.Crim.P. 590(B)(2) (requiring the judge to "conduct a separate inquiry of the defendant on the record" at the plea hearing "to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea or plea of nolo contendere is based"); *id.*, cmt. (listing the factors that the trial court must consider at a minimum to assess the defendant's understanding of "the full impact and consequences" of the plea).

demonstrate that he had entered his plea unknowingly, unintelligently, and involuntarily under the more liberal standard of fair and just reason to withdraw, an appeal pursuant to the more stringent standard of manifest injustice is unquestionably frivolous.

The final potential issue identified by counsel is a challenge to the discretionary aspects of his sentence.[11] ***Anders*** Brief at 14-15. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Barnes***, 167 A.3d 110, 122 (Pa. Super. 2017) (en banc). Because the right to appellate review of the discretionary aspects of a sentence is not absolute, it "must be considered a petition for permission to appeal." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014). To invoke this Court's jurisdiction, an appellant must satisfy a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

---

[11] We note that when a defendant enters an open plea, without an agreed upon sentence, he may challenge the discretionary aspects of the sentence imposed. ***See Commonwealth v. Brown***, 240 A.3d 970, 972 (Pa. Super. 2020).

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013).[12]

Hargrove, through Attorney Hurley, did preserve the ability to challenge the discretionary aspects of sentence by objecting generally to the sentence in a post-sentence motion. However, once again, because Hargrove refused to cooperate with counsel, refused to participate in the psychological evaluation or the pre-sentence investigation, forfeited his right to attend the sentencing hearing, and refused to be sworn or to affirm so that he could participate in the hearing on the post-sentence motion, Hargrove has never identified any specific challenge to the sentence imposed by the trial court. Hargrove needed to present his specific challenge to the trial court in the first instance for this Court to be able to review the trial court's exercise of its discretion in sentencing. *See* Pa.R.A.P. 302(a); *see also Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020) (explaining that this Court cannot "address issues that were not properly preserved in the trial court" and "the mere filing of an *Anders* brief and petition to withdraw will not serve to resuscitate claims that were already waived upon the filing of the notice of appeal"). Therefore, any challenge to the discretionary aspects of Hargrove's sentence—a sentence below the guideline range that the trial court imposed accompanied by its detailed reasoning—has not been preserved, and raising

---

[12] In the *Anders* context, counsel's failure to submit a Rule 2119(f) statement does not preclude review of whether a discretionary aspects of sentencing claim is frivolous. *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015).

this issue on appeal would be frivolous. *See Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa. Super. 2008) (stating that when an issue has been waived, "pursuing th[e] matter on direct appeal is frivolous").

Our independent review of the record reveals no other non-frivolous issues that Hargrove could raise on appeal.[13] *See Dempster*, 187 A.3d at 272. We therefore grant Counsel's petition to withdraw and affirm Hargrove's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judge Nichols joins the memorandum.

P.J.E. Panella concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2024

---

[13] We have conducted our review mindful of the fact that upon entering an open plea without an agreed-upon sentence, the defendant generally waives all legal challenges and defenses except "matters concerning the jurisdiction of the court, the validity of the … plea, … the legality of the sentence," and "the discretionary aspects of the sentence imposed." *Brown*, 240 A.3d at 972.